IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

| | |
|---|---|
| JULIETTE JOHNSON, | ) Civil Action No. 1:24-cv-1 Kleeh |
| *Plaintiff,* | ) Filed Electronically |
| v. | ) |
| SODEXO, INC., and SDH EDUCATION WEST, LLC, | ) |
| *Defendants.* | ) **JURY TRIAL DEMANDED** |

ELECTRONICALLY FILED
1/03/2024
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT IN CIVIL ACTION

Plaintiff, Juliette Johnson, by and through her undersigned counsel, files this Complaint in Civil Action against Defendants, Sodexo, Inc., and SDH Education West, LLC, averring as follows:

## THE PARTIES

1. Plaintiff, Juliette Johnson, ("Plaintiff") is an African American adult individual who resides Morgantown, Monongalia County, West Virginia.

2. Defendant, Sodexo, Inc. ("Sodexo"), is a Delaware corporation and maintains its headquarters at 9801 Washingtonian Boulevard, Gaithersburg, Maryland 20878.

3. Defendant SDH Education West, LLC, ("SDH") is registered with the West Virginia Secretary of State as a limited liability company with a designated office in Kanawha County located at 5400 D Big Tyler Road, Charleston, West Virginia 25313.

4. SDH is a wholly owned subsidiary of Sodexo and, upon information and belief, SDH and Sodexo operated in concert as Plaintiff's employer.

5. Sodexo contracts with educational, health care, and business institutions to operate food services and provide facilities management within their buildings.

6. Defendants provide, among other things, dining services to the students of West Virginia University located in Morgantown, Monongalia County, West Virginia.

7. At all times pertinent hereto, Plaintiff worked for Defendants at their account with West Virginia University, 1550 University Avenue, Morgantown, West Virginia.

## JURISDICTION AND VENUE

**A.      This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and 42 USCS § 2000e-5(f)(3), and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

8. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 USCS § 2000e-5(f)(3), as Plaintiff is advancing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (collectively, referred to as the "Federal Law Claims").

9. Plaintiff is also advancing claims under the West Virginia Human Rights Act, W. Va. Code § 5-11-1, *et seq.* ("WVHRA") (the "State Law Claims").

10. This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claims.

11. Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

B.  **The United States District Court for the Northern District of West Virginia is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

12. Venue is proper in the United States District Court for the Northern District of West Virginia, Clarksburg Division (the "Northern District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.

13. Specifically, these events and omissions occurred within Monongalia County, West Virginia which is one of the counties encompassed by the Northern District.

14. This matter is properly before the Clarksburg Division of the Northern District given the conduct complained of herein arose in Monongalia County, West Virginia, and conduct arising within Monongalia County is docketed within the Clarksburg Division of the Northern District pursuant to the Northern District of West Virginia Local Rules, LR Gen P 77.02.

C.  **This Court May Exercise Personal Jurisdiction Over Defendants.**

15. 42 USCS § 2000e-5(f)(3) provides, in relevant part: "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this title [42 USCS §§ 2000e *et seq.*]. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed. . . ."

16. As discussed above, the unlawful employment actions that give rise to Plaintiff's claims occurred in West Virginia. Accordingly, Defendants may properly be personally brought before this Court pursuant to 42 USCS § 2000e-5(f)(3).

**D.   Plaintiff Has Exhausted Administrative Remedies; Her Federal and State Law Claims Are Properly Before This Court.**

17.   Plaintiff has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and W. Va. Code § §5-11-10 and now may proceed to bring this action before the Court.  Specifically:

(a)   On or about April 24, 2023, Plaintiff dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2023-01663 (the "EEOC Charge") and with the West Virginia Human Rights Commission[1] (the "WVHRC").

(b)   On October 5, 2023, the EEOC issued the Notice of Right to Sue, wherein Plaintiff was afforded ninety days within which to timely file the Federal Law Claims and the State Law Claims.  A true and correct copy of the Determination and Notice of Rights is attached hereto as **Exhibit A** and incorporated herein.  The instant Complaint is filed within the ninety-day time period.

## FACTUAL BACKGROUND

18.   Plaintiff commenced her employment with Defendants in or around August 2021 in the role of "Food Service Provider" (the "Position") and was paid an hourly rate of $13.75.

19.   Within the Position, Plaintiff was responsible for the preparation and serving of food along with performing general cleaning services.

---

[1] The Charge was originally filed with the Pennsylvania Human Relations Commission; however, by letter dated May 9, 2023, the EEOC notified Plaintiff that the matter was transferred the WVHRC.

20.     For saliency, Plaintiff was stationed at a dining facility on the campus of West Virginia University (the "University").

21.     On or about September 2022, Plaintiff requested a change in her schedule, Defendants obliged, and subsequently moved Plaintiff to another dining facility at the University to accommodate Plaintiff's schedule change.

22.     At her new dining facility, Plaintiff was placed under the immediate supervision of Angelica Lusk ("Lusk").

23.     Plaintiff performed her work duties under the supervision of Lusk for several weeks without incident or reprimand.

24.     Shortly thereafter, while working a shift, Plaintiff was told by Lusk to take a 15-minute break. Plaintiff complied and went to the break room to commence her break.

25.     Plaintiff was in the break room with two other female African American coworkers when Lusk abruptly entered the break room and stated, "*you people cannot go on break together.*"

26.     Perhaps quite obviously, in referring to the three African American individuals who were then assembled in the breakroom as "you people," Lusk classified and denoted African Americans in a derogatory manner, identifying them as a subclass of employees and individuals.

27.     Upon information and belief, Lusk permitted Caucasian employees who were similarly situated to Plaintiff to congregate in the break room without incident or chastisement.

28.     Subsequent to the derogatory remark hurled at Plaintiff and her coworkers, Lusk proceeded to issue Plaintiff with a written warning for taking an "unauthorized break" despite having explicit permission to take said break from Lusk herself.

29.  Lusk exhibited a pattern of abusing her title and position over Plaintiff and her similarly situated coworkers by making callous remarks and conducting herself in a hostile manner.

30.  On several occasions, Lusk approached Plaintiff and would tell her, "*I am the boss of you*" and "*I am superior to you.*"

31.  Lusk regularly and routinely made such statements to Plaintiff without being prompted in any manner.

32.  Lusk perpetuated this animus towards Plaintiff by routinely and regularly making comments of this nature to her in front of coworkers and students at the University alike.

33.  In making the above-mentioned statements, Lusk clearly was expressing her personal feelings of superiority over Plaintiff and, in so doing, implicitly referred to Plaintiff's status as an African American individual as rendering her inferior to Caucasian individuals.

34.  Based on information and belief, Lusk did not carry the same animus against Plaintiff's similarly situated Caucasian coworkers, who Lusk would often refuse to discipline.

35.  A clear inference can be made that Lusk was expressing her personal feelings of superiority over Plaintiff and, in so doing, implicitly referred to Plaintiff's status as an African American individual as rendering her inferior to Caucasian individuals.

36.  In October 2022, Plaintiff filed an official complaint with Keith Richards ("Richards") against Lusk, protesting the race-based comments that Lusk directed toward Plaintiff and requesting that Lusk refrain from making such comments in the future.

37.  In early November 2022, and prior to resolution of Plaintiff's complaint against discrimination, Plaintiff arrived at worked and finished cleaning the cafeteria tables.

38. Next, as was her usual workday agenda, Plaintiff endeavored to complete other job-related tasks.

39. At the end of Plaintiff's work shift, Lusk demanded that Plaintiff again clean the cafeteria tables.

40. Although Plaintiff was tasked with cleaning the cafeteria tables at the beginning of her shift, it was outside the scope of Plaintiff's scheduled job duties to clean tables at the end of her shift.

41. Tellingly, several Caucasian employees who had just commenced their work shift or were otherwise tasked with cleaning the cafeteria tables were situated at the cafeteria tables having a conversation and clearly not engaging in work-related activities.

42. As such, Lusk publicly singled Plaintiff out for differential treatment viz-a-viz her Caucasian coworkers.

43. Upon information and belief, Lusk had never requested that a Caucasian employee who was similarly situated with Plaintiff clean the cafeteria tables twice in one shift.

44. A few days later, on or about November 4, 2022, Plaintiff was placed on an unpaid suspension for an indefinite period.

45. Upon receiving notice of the suspension, Plaintiff asked Lusk to provide her with a reason for the suspension. In turn, Lusk stated that she placed Plaintiff on suspension due to "insubordination."

46. Plaintiff then requested that Lusk provide her with specific instances where Plaintiff acted in a manner insubordinate to Lusk. However, Lusk was unable to devise any concrete examples where Plaintiff engaged in insubordination.

47. On January 3, 2023, and prior to Plaintiff's return from the indefinite suspension period, Plaintiff received a phone call from Defendants notifying her that her employment was terminated, effective immediately.

48. During the January 3, 2023 call, Plaintiff asked for an explanation for the discharge, however, one was not provided and, to this day, Plaintiff has not received an explanation from Defendants for terminating her employment.

## COUNT I
## RACE DISCRIMINATION
## IN VIOLATION OF TITLE VII AND THE WVHRA
## 42 U.S.C. § 2000e, *et seq.*, and W. Va. Code § 5-11-1, *et seq.*

49. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

50. Title VII and the WVHRA prohibit discrimination in employment on the basis of race.

51. Under Title VII, it is unlawful for an employer to "discriminate against[] any individual because of his race. . . in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee. . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(c)(1)-(2).

52. Similarly, W. Va. Code § 5-11-9(7) makes it unlawful "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required. . . ." *See also,* W. Va. Code § 5-11-3 ("[t]he term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color,

national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate[.]").

53. "To establish a prima facie case of discrimination under Title VII and the WVHRA, a plaintiff must allege: '(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Roy v. Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers Local Union No. 33*, CIVIL ACTION NO. 2:19-cv-00698, 2020 U.S. Dist. LEXIS 174706, at *6-7 (S.D.W. Va. Sep. 23, 2020) (quoting *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.*, 566 U.S. 30 (2012). *See also, Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 457 S.E.2d 152, 159 (W. Va. 1995) (holding an employment discrimination claim under the WVHRA mirrors an identical claim under Title VII).

54. Plaintiff experienced racism and discrimination based upon her race from the commencement of her employment through the time of her termination, including the following:

(a) The derogatory remarks made by Lusk toward Plaintiff as a result of her race;

(b) Disparate treatment of Plaintiff compared to her similarly situated Caucasian coworkers, including disparate enforcement of policies and discipline;

(c) The harassment and abusiveness directed at Plaintiff and intended to make Plaintiff feel inferior to her Caucasian coworkers, including, but not limited to, requiring Plaintiff to clean the cafeteria tables at the end of her shift, which task was outside the scope of Plaintiff's scheduled job duties and was intended to humiliate Plaintiff in front of her Caucasian coworkers;

  (d)  In placing Plaintiff on unpaid suspension; and

  (e)  In terminating Plaintiff's employment.

**A. Plaintiff is African American and, Therefore, a Member of a Protected Class.**

55. At all times relevant hereto, Plaintiff was a member of a protected group insofar as she is an African American female.

56. Plaintiff was qualified to perform the tasks and job duties of the Position, and exercised the skill and ability needed to perform the essential functions of the Position.

**B. Plaintiff Suffered Adverse Employment Actions and Was Treated Less Favorably than Similar Employees Outside Her Protected Class.**

57. Under Title VII and the WVHRA, an "adverse employment action" includes action that results in an adverse effect to the employee's "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a). *See also, Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 60-64 (2006) (defining the scope of conduct prohibited under Title VII's antidiscrimination provision); *Burke v. Wetzel Cty. Comm'n*, 815 S.E.2d 520, 534-35 (W. Va. 2018) (defining prohibited conduct under the WVHRA as that which adversely affects the "compensation, hire, tenure, terms, conditions, or privileges of employment.").

58. Plaintiff suffered adverse employment actions as a result of the discrimination set forth above, including unpaid suspension and termination, both of which altered the status of her employment and resulted in loss of compensation.

59. The actions set forth in Paragraph 54 above, including but not limited to disparate discipline, verbal abuse and harassment, unpaid suspension, and termination, were actions not suffered by Plaintiff's similarly situated Caucasian coworkers.

60. As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and

lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**HOSTILE WORK ENVIRONMENT BASED ON RACE**
**IN VIOLATION OF TITLE VII AND THE WVHRA**
**42 U.S.C. § 2000e,** *et seq.***, and W. Va. Code § 5-11-1,** *et seq.*

61. Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

62. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Haught v. Louis Berkman, LLC*, Civil Action No. 5:03CV109 (STAMP), 2005 U.S. Dist. LEXIS 18709, at *28 (N.D.W. Va. Jun. 15, 2005) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations omitted)).

63. The elements of a hostile work environment claim under Title VII are essentially the same as those to make out a prima facie case under the WVHRA. *See also, Burke v. Wetzel Cty. Comm'n*, 815 S.E.2d 520, 534-35 (W. Va. 2018) (setting forth the elements for a "hostile work environment" and concluding the elements are essentially the same for the different protected classes).

64. To establish a claim for hostile work environment under Title VII and the WVHRA, a plaintiff must show that the workplace harassment was "(1) unwelcome, (2) based on race, and (3) sufficiently severe and pervasive to alter the conditions of employment and create an abusive atmosphere[;]" and (4) "there is some basis for imposing liability" on the employer for the

harassment. *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 297 (4th Cir. 2004) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).

A.  **The Workplace Harassment Was Unwelcome and Based on Plaintiff's Race.**

65. The insults and derogatory remarks made by Lusk toward Plaintiff were racially charged and directed at Plaintiff's membership in her protected class as an African American.

66. Further, the actions set forth in Paragraph 54 above, including but not limited to disparate discipline, verbal abuse and harassment, unpaid suspension, and termination, were actions not suffered by Plaintiff's similarly situated Caucasian coworkers.

B.  **The Hostile Work Environment Altered the Terms and Conditions of Plaintiff's Employment.**

67. The United States Court of Appeals for the Fourth Circuit has held that, "the use of an unambiguously racial epithet by a supervisor in the presence of his subordinates" can "quickly alter the conditions of employment and create an abusive working environment." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 298 (4th Cir. 2004) (quoting *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993)).

68. As set forth above, the hostile work environment created by Defendants resulted in unpaid suspension and ultimately termination.

69. Further, the discriminatory conduct directed at Plaintiff in the workplace was sufficiently severe and/or pervasive, including the racially charged derogatory remarks directed at Plaintiff, such that it altered the terms and conditions of Plaintiff's employment by creating a hostile and abusive work environment.

C.     **The Hostile Work Environment Is Imputable to Defendants.**

70.    "Employers are generally presumed to be liable for hostile work environment harassment committed by supervisory employees." *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 299 (4th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998)).

71.    At all times pertinent hereto, Lusk and Richards were Plaintiff's supervisors; therefore, Defendants are liable for their conduct.

72.    Further, Plaintiff complained of Lusk's conduct to Richards and, rather than correct the hostile and abusive environment, Defendants doubled down, placing Plaintiff on unpaid suspension and ultimately, terminating her employment.

73.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**RETALIATION**
**IN VIOLATION OF TITLE VII AND THE WVHRA**
**42 U.S.C. § 2000e,** *et seq.***, and W. Va. Code § 5-11-1,** *et seq.*

74.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

75.    Title VII's antiretaliation provision prohibits discrimination against an employee because she has opposed discriminatory conduct made unlawful under 42 U.S.C. §§ 2000e–2. 42 USCS §§ 2000e–3(a) ("It shall be an unlawful employment practice for an employer to

discriminate against any of his employees. . . because he has opposed any practice made an unlawful employment practice by this title [42 USCS §§ 2000e–2000e-17]. . . .").

76. Similarly, W. Va. Code § 5-11-9(7)(A) makes it unlawful for any person or employer to: "[e]ngage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section[.]"

77. The West Virginia Supreme Court has construed a retaliation claim under the WVHRA "to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Ullom v. Rust-Oleum Corp.*, CIVIL ACTION NO. 3:22-0255, 2023 U.S. Dist. LEXIS 4245, at *5 n.3 (S.D. W. Va. Jan. 10, 2023) (quoting *Hanlon v. Chambers*, 464 S.E.2d 741, 753-54 (W. Va. 1995)).

78. To establish retaliation under the Title VII and the WVHRA, a plaintiff must show that: "(1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal link existed between the protected activity and the adverse employment action." *Haught v. Louis Berkman, LLC*, Civil Action No. 5:03CV109 (STAMP), 2005 U.S. Dist. LEXIS 18709, at *26 (N.D.W. Va. Jun. 15, 2005) (citing *Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998)).

A.   **Plaintiff Engaged in Protected Activity by Reporting the Discriminatory Conduct to Defendants.**

79. "'Protected activity' 'includes opposition to a practice that the plaintiff reasonably and in good faith believes violates the provisions of the Act.'" *Ullom*, 2023 U.S. Dist. LEXIS 4245, at *7 (quoting *Roth v. DeFeliceCare, Inc.*, 700 S.E.2d 183 (W. Va. 2010)).

80.     The Fourth Circuit has recognized that, "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,' as well as 'complaints. . . about suspected violations.'" *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) (quoting *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44 (4th Cir. 2003)).

81.     Plaintiff engaged in protected activity by reporting the unlawful discriminatory conduct to Defendants.

82.     Plaintiff also engaged in protected activity by voicing her own opinion and otherwise opposing Lusk's discriminatory conduct in order to bring attention to the unlawful activities.

**B.      Plaintiff Suffered an Adverse Employment Action.**

83.     Under Title VII, "a broader definition of adverse action applies to retaliation claims." *Cox v. Huntington Musuem of Art, Inc.*, CIVIL ACTION NO. 3:20-0142, 2020 U.S. Dist. LEXIS 71887, at *10 n.1 (S.D.W. Va. Apr. 23, 2020).

84.     The United States Supreme Court has held that "Title VII's substantive and antiretaliation provisions 'are not coterminous,' and the 'scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm.'" *Cox v. Huntington Museum of Art, Inc.*, CIVIL ACTION NO. 3:20-0142, 2020 U.S. Dist. LEXIS 71887, at *10 n.1 (S.D.W. Va. Apr. 23, 2020) (quoting *Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53, 67 (2006)).

85.     Thus, unlike Title VII's anti-discrimination provision, the antiretaliation provision of Title VII "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern & Santa Fe Railroad Co. v. White*, 548 U.S. 53, 64 (2006).

86. To establish an "adverse employment action" for purposes of Title VII's anti-discrimination provision, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 721 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

87. As set forth above, Plaintiff suffered adverse employment action through unpaid suspension and termination.

C. **A Causal Link Exists Between Plaintiff's Protected Activities and the Adverse Employment Actions.**

88. Plaintiff reported the discriminatory conduct and hostile work environment to Defendants in October 2022.

89. The first adverse employment action occurred less than one month later, when Plaintiff was placed on unpaid leave pending the investigation into her report.

90. Then, before Plaintiff returned to work, and while she was still on unpaid leave, Defendants terminated her employment in further retaliation for her protected conduct.

91. As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, which tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## **PRAYER FOR RELIEF**

92. Plaintiff, Juliette Johnson, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendants, SDH Education West, LLC, and Sodexo Inc., and prays for relief as follows:

(a) Declare and find that Defendants committed one or more of the following acts:

    (i) Violated Title VII and the WVHRA by discriminating against Plaintiff because of her race;

    (ii) Violated Title VII and the WVHRA by creating and sustaining a hostile work environment in further discrimination against Plaintiff; and

    (iii) Violated Title VII and the WVHRA by unlawfully retaliating against Plaintiff;

(b) Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

(c) Award equitable relief in the form of back pay and front pay, including overtime pay;

(d) Award punitive damages sufficient to deter Defendants from engaging in future conduct of a similar nature;

(e) Award reasonable attorneys' fees and costs of suit incurred in prosecuting these claims;

(f) Award pre-judgment and continuing interest as calculated by the Court; and

    (g)    Award such other and further relief as this Court deems just, equitable, and proper.

**JURY TRIAL DEMANDED.**

        Respectfully submitted,

        **GOLD, KHOUREY & TURAK, L.C.**

Date: January 3, 2024    By:    <u>s/Christopher M. Turak</u>
        Christopher M. Turak, Esq. (WV Bar #8611)
        Michelle Marinacci, Esq. (WV Bar #7482)
        Gold, Khourey & Turak, L.C.
        510 Tomlinson Avenue
        Moundsville, WV 26041
        Telephone: 304.845.9750
        Fax: 304.845.1286
        cmt@gkt.com
        mlm@gkt.com
        *Counsel for Plaintiff*